IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ECONOMIC RESEARCH SERVICES INC.,     No. C-07-04175 EDL

    Plaintiff,

v.

NORTH WESTERN CORPORATION,

    Defendant.

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING CASE TO DISTRICT OF MONTANA**

On August 14, 2007, Plaintiff Economic Research Services Inc. filed this breach of contract action against Defendant Northwestern Corporation, based on a consulting agreement for Plaintiff to provide economic advice and services, including an auction design, to Defendant, a provider of electricity and natural gas in the mid-west. Plaintiff alleges that Defendant failed to pay for all services rendered in the amount of $478,069.00. On November 12, 2007, Defendant filed a motion to dismiss based on lack of personal jurisdiction, or in the alternative, to transfer venue to the District of Montana. The matter was fully briefed. On December 18, 2007, the Court held a hearing on Defendant's motion. For the reasons stated at the hearing and in this Order, Defendant's motion to dismiss is granted, and this matter is transferred to the District of Montana.

**Background**

Plaintiff is in the business of providing economics-related consulting services to clients. Declaration of Sam Kimelman ¶ 3; Compl. ¶ 4. Plaintiff has "a" principal office in Emeryville, California. Kimelman Decl. ¶ 3; Compl. ¶ 4. At the hearing, Plaintiff's counsel stated that Plaintiff was incorporated in Delaware and has it principal place of business in Florida.

1   Defendant is a provider of electricity and natural gas, with its general offices in Montana,
2   where approximately 80% of its business is found. Declaration of John Hines ¶¶ 5-6. Defendant
3   procures electric supply from suppliers within Montana, the greater Pacific Northwest and Canada.
4   Id. ¶ 9. Defendant is incorporated in Delaware and has its principal place of business in Sioux Falls,
5   South Dakota. Id. ¶ 3. Defendant is authorized to do business in Montana, Nebraska and South
6   Dakota, and its business activities are confined to those three states. Id. ¶ 4. Defendant does no
7   business in California, does not maintain offices in California and is not found in California for any
8   other purpose. Id. ¶ 5. All of Defendant's employees who were involved in this matter are located
9   in Montana. Id. ¶ 8; Gates Decl. ¶ 4.

10  In 2006, Defendant sought a bid from Plaintiff for services relating to a prospective auction
11  for the procurement of electric power by contacting Plaintiff's Florida office. Kimelman Decl. ¶ 5.
12  Defendant was re-directed to Plaintiff's California office. Later, Plaintiff submitted a proposal,
13  which Defendant accepted. Kimelman Decl. ¶ 5; Hines Decl. ¶¶ 14, 18. Plaintiff's representatives
14  traveled to Montana on several occasions in support of Plaintiff's proposal and made several calls to
15  Defendant's staff in Montana. Hines Decl. ¶ 15. Defendant never traveled to California during the
16  negotiations, and its only communications with Plaintiff were by telephone. Hines Decl. ¶ 16. The
17  parties negotiated a Consulting Services Agreement, which Plaintiff negotiated from its offices in
18  California, and Defendant negotiated from its offices in Montana and South Dakota, and which
19  became effective on May 10, 2006. Kimelman Decl. ¶ 6; Hines Decl. ¶ 18, Ex. A. Plaintiff's
20  representative based in Emeryville, David Salant, signed the Agreement on behalf of Plaintiff.
21  Kimelman Decl. ¶ 6. Defendant's Vice President of Wholesale Operations, David Gates, based in
22  Montana, signed the Agreement on behalf of Defendant. Id. ¶¶ 6-7; Gates Decl. ¶ 4.

23  Between May and November 2006, Plaintiff provided services under the Agreement,
24  including designing, creating, coding, testing and implementing an auction system. Kimelman Decl.
25  ¶ 8. Plaintiff also provided regulatory and support services. Id. To register for the auction,
26  potential auction participants contacted Plaintiff in Emeryville, and were provided user names and
27  passwords. Kimelman Decl. ¶ 9. In October 2006, Mr. Salant, on behalf of Plaintiff, conducted a
28  live real-time "practice auction" over the Internet; Defendant's staff participated in the auction from

2

offices in Montana. Hines Decl. ¶ 19. On November 14, 2006, Plaintiff conducted an auction on behalf of Defendant in Montana. Kimelman Decl. ¶ 10; Hines Decl. ¶ 20. The auction was conducted by Plaintiff's staff operating from Defendant's offices in Montana. Hines Decl. ¶ 20. The computer servers running the auction and the support staff for the auction were located in California. Kimelman Decl. ¶ 10. Defendant was instructed to remit payments under the contract to Plaintiff in Texas. Reply in Support of Mot. to Dismiss at 6:2. Between October 2006 and February 2007, Plaintiff invoiced Defendant a total of $478,069.00, which remains unpaid. Kimelman Decl. ¶ 11; Hines Decl. ¶ 21.

**Discussion**

### The Court lacks specific personal jurisdiction over Defendant

Personal jurisdiction is determined by the applicable state personal jurisdiction statute and constitutional principles of due process. See Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F. 2d 1280, 1286 (9th Cir. 1977). Due process requirements allow California courts to exert personal jurisdiction only where the nonresident defendant has sufficient minimum contacts with the state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. See, e.g., International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Under the broadly stated jurisdictional rule of International Shoe, California law recognizes two ways that constitutionally sufficient minimum contacts can be shown. Farris v. Capt. J.B. Fronapfel Co., 182 Cal. App. 3d 982, 987 (1986). First, if the nonresident's activities are "extensive or wide-ranging" or "substantial . . . continuous or systematic," a court may exercise general jurisdiction with respect to any cause of action asserted against a nonresident. Id. (citations omitted); see also Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848, 851 n3 (9th Cir. 1993) (noting courts have "regularly declined to find general jurisdiction even where the contacts were quite extensive"). Plaintiff here does not contend that Defendant is subject to general jurisdiction.

Second, if pervasive contacts are lacking, due process allows exercise of specific personal jurisdiction when the claim arises out of the nonresident's activities within or affecting the forum state under the following circumstances:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the

3

    privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) The claim must be one which arises out of or results from the defendant's forum-related activities; (3) Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1286.

    Plaintiff bears the burden of establishing that venue is in the proper forum. See Data Disc, 557 F.2d at 1285; see also Schwarzer, Federal Civil Procedure Before Trial §§ 9:135-36, 9:140 ("Logically the burden should rest with plaintiff. The party that invokes the court's jurisdiction should have the burden of establishing both its jurisdiction and that it is a 'proper' forum."). In determining whether the plaintiff has presented a prima facie case, the Court must assume the truth of well-pled allegations in the complaint that are not contradicted. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002) (un-controverted allegations in complaint must be taken as true; conflicts between affidavits must be resolved in plaintiff's favor). Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, but must present admissible evidence, which if believed, would support the court's exercise of personal jurisdiction. Data Disc, 557 F.2d at 1284.

    The purposeful availment requirement is met if Defendant engaged in "significant activities" within California or has created "continuing obligations" between itself and the forum. Gray & Co. v. Firestenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). Purposeful availment will not be found where the defendant's contacts with the forum occurred solely by the actions of the plaintiff or of a third party. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n. 17 (1985). Even one single act can support jurisdiction, as long as it creates a "substantial connection" to the forum. Id. at n. 18; Yahoo! Inc. v. La Lique Contre Le Rasime et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (purposeful availment prong can be satisfied by "purposeful availment of the privilege of doing business in the forum, by purposeful direction of activities at the forum; or by some combination thereof."). In contract cases, courts "typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." Yahoo!, 433 F.3d at 1206.

    As an initial matter, there has been no showing that Plaintiff, which was incorporated in

4

United States District Court
For the Northern District of California

Delaware and has its principal place of business in Florida, is a resident of California. At the hearing, Plaintiff's counsel clarified that Plaintiff did not have its principal place of business in California, and only had "a" principal office here. Therefore, the cases that Plaintiff relies on to show that Defendant purposefully directed its activities at a forum resident are inapposite . See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at *residents of the forum* [citations omitted] and the litigation results from alleged injuries that 'arise out of or relate to' those activities.") (emphasis added); Gray & Co. v. Firstenburg Machinery Co., 913 F.2d 758, 760 (9th Cir. 1990) ("A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a state or has created "continuing obligations" *between himself and the residents of the forum.*'") (emphasis added).

But even assuming that Plaintiff is a resident of California, there is insufficient evidence that Defendant purposefully availed itself of California. At the hearing, Defendant's counsel clarified that Defendant sought a bid on the auction project from Plaintiff by calling Plaintiff's Florida office. Defendant was re-directed to the California office and did eventually enter into an agreement with Plaintiff through the California office. But there has been no showing that Defendant sought out Plaintiff in California, nor did Defendant go to California during the negotiation of the Agreement. Although the contract contemplated a period of services to be performed by Plaintiff for Defendant possibly in California, the consequences of the Agreement were felt to a large extent in Montana. The Agreement itself was signed on Defendant's behalf in Montana, and the auction that Plaintiff performed under the Agreement was conducted by Plaintiff's personnel in Montana, albeit with support from California. Defendant did not deliver any products to California.

Plaintiff argues that purposeful availment can be found because the contract constituted a continuing relationship with Defendant. See Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir. 1991) (holding that the question of purposeful availment was a close one where the parties entered into a contract to make the defendant's book into a film, but that continuing obligations centering on the forum could satisfy the purposeful availment prong). The contract in this case does not

constitute a lengthy continuing relationship as in Roth; instead, it was an engagement for a short and finite period of time with the end result being an auction in Montana.

Plaintiff's opposition also focuses on its own conduct in California during the life of the contract as a basis for a California forum. The actions of Plaintiff, however, are largely irrelevant to personal jurisdiction over Defendant. See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 816-17 (9th Cir. 1988) (holding that the purposeful availment prong was not met in part because the plaintiff engaged in unilateral activity that could not confer jurisdiction over the defendant: "Similarly, appellants' statement that they 'performed 90% of [their] activities in the Bay Area,' even if accurate, describes only unilateral activity. Again, such activity fails to create personal jurisdiction over SICC. . . . '"[A plaintiff's] performance in California cannot give jurisdiction over . . . [a non-resident defendant]; it is [a defendant's] activity that must provide the basis for jurisdiction."'") (quoting Republic Int'l Corp. v. Amco Eng'rs Inc., 516 F.2d 161, 167 (9th Cir. 1975)). Accordingly, the Court lacks personal jurisdiction over Defendant and need not reach the remaining elements of the personal jurisdiction analysis.

**In the interest of justice, this matter shall be transferred to the District of Montana**

The Court has discretion to order transfer in lieu of dismissal to avoid injustice. 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."). However, dismissal, rather than transfer, may be appropriate where the plaintiff is harassing the defendants, acting in bad faith or forum shopping; where the plaintiff's action is frivolous; or where the transfer would be futile because the case would be dismissed even after transfer. See King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992).

Here, this case "might have been brought" in the District of Montana. See 28 U.S.C. § 1391(a)(2). At the hearing, Defendant stated that it did not oppose transfer to Montana, and Plaintiff agreed. The majority of the events in this case took place in Montana, and the contract requires application of Montana state law to the parties' dispute. There is no evidence that Plaintiff is harassing Defendant by filing this action, nor has there been a showing of bad faith or frivolousness

by Plaintiff. Further, there is no indication that transfer would be futile. Therefore, the interest of justice require transfer of this case.

**Conclusion**

Accordingly, because the Court lacks personal jurisdiction over Defendant, Defendant's motion to dismiss is granted. In lieu of dismissal and in the interest of justice, however, the action is transferred to the District of Montana pursuant to 28 U.S.C. § 1631.

**IT IS SO ORDERED.**

Dated: December 21, 2007

ELIZABETH D. LAPORTE
United States Magistrate Judge